Good morning, Your Honours. Good morning. My name is Karen Bucher and I represent the appellant Prince Mayele. I would like to begin this argument by saying that my response to the government's 28-J letter really sums up nicely my entire argument. In this case, Mr. Mayele's primary language is Lingala, which is spoken in Congo, and he argues that the Court Interpreters Act was violated when a district court did not appoint a Lingala interpreter during the proceedings. In this case, early on, the district court noted immediately that there was a language... Let me interrupt you just a minute. What's the standard of review, our standard? De novo? De novo for reviewing the meaning of the statute, abuse of the court's decision. I mean, let me be more specific. The district court was in a position actually to talk to your client at some length, and I guess on several occasions. We can't do that, and it would strike me as a bit strange. I can understand a reason for it legally, but it would be a little strange for us to say, well, we'll review it de novo by reading it, whereas somebody talked to your client at some length and would be in a better position than we possibly could, I would think, to make that judgment. Your Honor, the focus is on the text of the statute, and that's where I'm focusing this appeal on. The court interpreted the statute when she noticed there is a problem that he does speak Lingala, and that's his primary language. Then there was this inquiry that she was required to do under the Act, and defense counsel said, yes, he speaks English fine for these proceedings, but when he gets to trial, he will need a Lingala interpreter. The court said, okay, and this is where the appeal turns on. When there's a finding that an interpreter is required, the statute requires, actually mandates, that the court interpreter must be used. But there was no such finding? There was a finding. It wasn't artfully done, but basically what happened during the discussion, first the court brings it up, she noticed it on the docket, that Mr. Maile required services of a Lingala interpreter, so she did what she's supposed to do, inquire, and when he gets down to trial, when you're talking about real complex legal issues and theories, he will need a Lingala interpreter. And what she said, she said, okay, but she also said, you know, please let me know when we get to trial, but the statute says she can't do that. It's her duty. It's the court's duty. Once they make the finding, the statute says the court shall use the services of an interpreter, except for under one exception, is when the defendant gets up and makes an express waiver on the record. If counsel says he will need an interpreter if he goes to trial? Yes. It didn't go to trial? No, Your Honor, but it went to change of plea and sentencing. Right. Now at the change of plea, he's standing there with the lawyer, right? Yes. Neither of them said at that point he needs an interpreter. Right. I just want to make sure I got this right. Is that right? Right. That's really a good point, Your Honor, because, see, what my argument is, I'm just saying, what does the law say and what does the statute say? The statute says once the court makes a finding that an interpreter is needed, that sort of attaches the interpreter, and from that point forward, the statute requires that the court must use the interpreter unless on the record the defendant waives his right to an interpreter after the court, you know, What do we do about, I read the proceeding and it looks like the guy carried on a perfectly lucid, fluent conversation in English. Yes, he can understand. He does understand English when you're conversing. Okay, but put yourself in our shoes. We have the guy standing there. He doesn't request an interpreter. He's got a lawyer there. He doesn't request an interpreter. I read the transcript. It looks like he's completely fluent in English. What basis would we have to reverse this? On the statute, Your Honor, and that's what I'm focusing on. Even the underlying crime to which he pled, he conducted that, those dealings, in English. Yes, we know what it really is, Your Honor, what he doesn't understand. He doesn't understand how his conduct violated federal law. He doesn't get that, and I know that. Translation? He doesn't get the idea? He doesn't understand the concept of what he did. How would a word-for-word translation change that? Well, I was having difficulties as well, and I got a Lingala interpreter. And I put what we were having difficulties with on paper, and it was translated, then he understood it. So I have personal experience. I know it's off the record, but I do know what happened to him. He didn't understand what had happened. Well, that's another question. He pled guilty, and then he was sentenced some time later. And it wasn't until after he was sentenced that he figured out he wanted to. He didn't understand what happened at the change of plea. Is that right? You know, that's how the record might appear, but just going back, it might be harsh, but the law is the law. The statute is the statute. No, but I mean, it would seem like if he pled guilty in between the guilty plea and the sentencing, he might have said, gee, I didn't know what happened. But he was perfectly content to let his guilty plea stand until he got the sentence, and when he didn't like the sentence, that's when he brought up the problem with it. You know, I don't know how that happened. But that's the chronology of it, isn't it? It is, but going back to my argument, I'm just focusing on that part of the statute. That is, once the district court makes a finding, the court shall, must use an interpreter unless the defendant waives that right. And it's harsh. It's a harsh result, but that's what the statute says. Okay. Do you want to reserve some time? Yes, Your Honor. Thank you very much. Morning, Your Honors. May it please the Court, my name is Ellen Lindsey, and until August 31st, I'm an assistant United States attorney for the Central District of California retiring after 30 years. Congratulations. Good luck to you. Congratulations, 30 years. Thank you. Somebody take that down. It's on video. You're going to be a YouTube sensation. It's going to go viral. There will be 250 hits within an hour. There is a woman in my office who claims that at a Ninth Circuit argument, I threw a dirty Kleenex at one of the judges. I refuse to believe that, and I hope that wasn't on video. And, Your Honor, welcome to California. I am a genuine Valley girl, so if you have any questions about that. So is my wife. Uh-oh. She went to USC. Where'd you go? Oh, my God, I went to Cal. That's Berkeley. Anything you want to say about the case? Oh, yeah, the case. Okay. Your Honors, there's just two points that I'd like to make. First, the statutory claim, stand-alone statutory claim, is waived. And because the defendant knowingly and voluntarily waived his right to appeal, unless the plea was not voluntary or, as this Court has interpreted, there was an illegality, which includes an unconstitutional. And I understand that there is some debate as to whether the need for an interpreter can rise to a constitutional. Well, you know what? Here what happened was the Court, I mean, I don't, I'm not inclined to see this, you know, just me speaking for myself as an error. But it would be better if the district court made a clear ruling instead of saying, well, at the trial you'll need an interpreter, or even the AUSA was clearer, you know, at the trial they'll need an interpreter, but they don't need one now. So you create room for an appellate argument based on sort of just, you know, less than clear language and ambiguity in the finding. Well, I was the AUSA, and I can say it never occurred to any of us. I mean, the man was articulately addressing the Court, and I think although when you go back and you look through the record, I mean, this was like such a little blip on the radar that nobody even thought of it. It just didn't occur because he was so articulate. The kind of words he was using in English to address the Court, it just... Right, but when he was asked did he understand the proceedings, he said, to the best of my knowledge. He didn't say yes in the plea colloquy. I think he indicated that he did understand. To the best of my knowledge. That, again, Your Honor, if that's what he said, it would have gone over our heads. I can't speak for Judge Fisher, but because he was so articulately addressing the Court, addressing the government, the proffer that he had with the government is not in the record. He did receive cooperation points for meeting with the government and having a proffer about the facts of the case. He was able to discuss complex legal issues with the Court. The issue about restitution that he discussed is because in measuring loss in these types of cases, where he was a crooked money-gram operator, what you look at is the money-gram record showing the sins, people sending money, and you count those as victims, and what he was articulately addressing was those money-gram operators were also complicit and therefore it was fake sender names and so it shouldn't count for restitution. In other words, he was having these complex legal discussions with the Court and counsel. I think to the extent that there was any request ever for an interpreter, it was only kind of referred to for trial, and the Court certainly said, well, if he wants one for trial, we can do that. And I agree. There was no specific finding made that he could not understand English sufficiently to get by in the proceedings. But as Your Honor stated, as Judge Silverman stated, a trial is a very, very different animal from a guilty plea at which you're having a slow colloquy with the Court where you can pause, where if you don't understand a question, you're invited to speak to counsel, et cetera, et cetera. So unless Your Honors have any additional questions. This is it for me. Thank you, Ms. Lindsey. Thank you very much. Congratulations. Thank you. Just one brief comment. In the plea agreement, he is allowed to appeal an involuntary plea, and it's right there on page ER-158. And we're arguing that his plea is involuntary because he didn't understand. Thank you. The case just argued is submitted. Good luck to you, Ms. Lindsey.
judges: Silverman, Sack, Wardlaw